◼ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TIMOTHY BROWN, Respondent. [716 NYS2d 56] —Order, Supreme Court, New York County (Carol Berkman, J.), entered February 8, 1999, which granted defendant's motion to suppress physical evidence seized from defendant, unanimously reversed, on the law and the facts, suppression denied, and the matter remanded for further proceedings.

Any inquiry into the propriety of police conduct must weigh the degree of intrusion which it entails against the precipitat-

ing and attending circumstances which created the encounter (*People v De Bour*, 40 NY2d 210, 223; *People v Powell*, 246 AD2d 366, 368, *appeal dismissed* 92 NY2d 886). The court's focus must be on whether the police conduct was reasonable in view of the totality of the circumstances (*People v Batista*, 88 NY2d 650, 653; *People v Montilla*, 268 AD2d 270, *appeal dismissed* 95 NY2d 830) for, as we have stated in the past, reasonableness is the touchstone by which police-citizen encounters are measured (*see, e.g., People v Alexander*, 218 AD2d 284, 288, *lv denied* 88 NY2d 964).

In this matter, the officers initially noticed defendant and his companion, Derrick Martin, acting in a furtive manner while quickly walking away from a car which they had just parked, unlocked, at night, in an area known to the police to have a high incidence of stolen vehicles. The officers then observed that the interior of the car was in disarray and ascertained through a computer check that it was not registered to either man. Defendant and Martin then returned to the car and Martin, who suddenly noticed the plainclothes officers approaching, yelled "look out, the cops," grabbed his waistband and fled with an officer in pursuit. Defendant, who was already seated in the car with the door closed, opened the door, apparently in response to Martin's warning, and began to move his hand toward a bulge in his waistband. In our view, these circumstances provided the officer with a reasonable suspicion that defendant was reaching for a weapon (*People v Herring*, 273 AD2d 82; *People v Corbett*, 258 AD2d 254, *lv denied* 93 NY2d 898). "It is quite apparent to an experienced police officer, and indeed it may almost be considered common knowledge, that a handgun is often carried in the waistband" (*People v Benjamin*, 51 NY2d 267, 271; *see also, People v Warren*, 205 AD2d 368, *lv denied* 84 NY2d 911); and a police officer need not "await the glint of steel before he can act to preserve his safety." (*People v Benjamin, supra*, at 271.)

Accordingly, the officer acted appropriately when he touched the bulge, determined it was a hard object, and removed it (*People v Woods*, 64 NY2d 736, 737; *People v Herring, supra*, at 82; *People v Scott*, 197 AD2d 550, 551, *lv denied* 82 NY2d 903). To the extent that the hearing court based its finding on the fact that the package "feels like a package of rocks, small rocks," we have examined that package and conclude that the officer was warranted in removing it from defendant's waistband. Concur—Rosenberger, J. P., Nardelli, Williams, Mazzarelli and Wallach, JJ.