■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LARRY ROBINSON, Respondent. [718 NYS2d 524] —Order unanimously reversed on the law, motion denied, indictment reinstated and matter remitted to Erie County Court for further proceedings on the indictment. Memorandum: The People appeal from an order granting defendant's motion to suppress a gun obtained during a frisk of defendant and dismissing the indictment charging defendant with two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [1], [4]). County Court determined that the stop and frisk of defendant was not justified because neither was supported by reasonable suspicion that defendant had committed, was committing or was about to commit a crime. We reverse.

As we recently stated, " '[W]here no more than a common-law right to inquire exists, a frisk must be based upon a reasonable suspicion that the officers are in physical danger and that defendant poses a threat to their safety' " (*People v Stevenson,* 273 AD2d 826, 827, quoting *People v Hauser,* 80 AD2d 460, 462). Here, we conclude that a common-law right to inquire existed at the time of the frisk. While on routine patrol, shortly after midnight, the police observed defendant pacing back and forth on the front porch of the home of a recent homicide victim. As the police vehicle turned the corner onto the street on which the homicide victim's house was located, defendant ran down off the porch and began to walk away. Those

observations gave the officers an articulable reason for requesting information from defendant concerning his identity and destination (*see, People v Hollman,* 79 NY2d 181, 191). In response to the officers' questions, defendant admitted that he did not live at the house in question, and denied that he had been on the porch. He indicated where he lived and the location of the bar to which he was headed, and the officers knew that the house in question was not located on a direct route from defendant's home to the bar. Further, when defendant was asked to produce identification, his hand went first to his jacket pocket before he retrieved his wallet from the back pocket of his pants. We agree with the People that defendant's answers and actions provided the officers with the right to conduct a common-law inquiry, i.e., they provided the officers with a "founded suspicion that criminal activity was afoot" (*see, People v Hollman, supra,* at 191).

We further conclude that the testimony of the officers established a reasonable suspicion that defendant posed a threat to their safety. The officers testified that, after he gave them his identification, defendant again put his hand into his right jacket pocket. Defendant complied when one of the officers asked him to remove his hand from his pocket, but shortly thereafter he again placed his hand in his jacket pocket. The officer again asked him to remove his hand from his pocket. Although defendant complied, he soon moved his hand toward his jacket pocket a third time. At that point, the officers frisked defendant and discovered a gun in his right jacket pocket. In light of the repeated movements of defendant toward that pocket despite the officer's requests that he remove his hand from his pocket, we conclude that the frisk was a constitutionally justified intrusion designed to protect the safety of the officers (*see, People v Batista,* 88 NY2d 650, 653-654; *People v Diaz,* 181 AD2d 597, 599, *revd on other grounds* 81 NY2d 106). "It would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety" (*People v Benjamin,* 51 NY2d 267, 271). (Appeal from Order of Erie County Court, Pietruszka, J.—Suppression.) Present—Pigott, Jr., P. J., Green, Pine, Kehoe and Balio, JJ.