*892 Order, Supreme Court, Bronx County (Caesar Cirigliano, J.), entered on or about May 28, 2008, which, in a prosecution for criminal possession of a weapon in the fourth degree and unlawful possession of a knife, granted defendant’s motion to suppress physical evidence and a statement, reversed, on the law and the facts, the motion denied, and the criminal complaint reinstated.
On the night of March 11, 2007, the arresting detective and his partner were on motor patrol in an area known for gang activity. At approximately 11:30 p.m., defendant walked in front of the detective’s unmarked car at a deliberately slow pace, giving the appearance that he was trying to interfere with the flow of traffic. As the police car passed defendant, the detective observed in the light of the street lamps a shiny, silver-colored metallic object clipped to defendant’s right rear pants pocket. In addition to the object’s curved clip on the outside of the pocket, the top of the object visibly protruded above the top of the pocket. Based on his training and experience, involving 50 to 60 arrests for weapon possession, the detective believed the object to be a gravity knife or a small-caliber handgun.
After stopping his car, the detective and his partner approached defendant and asked him to stop. The officers did not draw their guns. When he was Two to three feet behind defendant, the detective pulled the shiny object out of defendant’s pocket. He did not frisk defendant or question him before taking the object, which proved to be an illegal gravity knife (see Penal Law § 265.01 [1]).
The detective and his partner placed defendant under arrest and drove him to the precinct station. While in transit, defendant spontaneously stated that he had been keeping the knife for his own safety, based on his belief that someone he knew was trying to kill him.
Defendant moved to suppress the knife and the statement he made in the police car. At the hearing, the arresting detective, who was the sole witness, testified to the facts set forth above. The detective testified that, before seizing the object clipped to defendant’s pocket, he “recognized it to be something that [he] had experienced.” In fact, he was “90 percent sure that it was either a knife or some other weapon.” “Basically,” he said, “the way the clip is designed and curved” was “typical of clips that are . . . part of knives.” The detective rejected defense counsel’s suggestion on cross examination that there was a significant *893 likelihood that the object might have been something innocuous, such as a money clip, a cell phone or a tape measure. The detective testified that money clips and cell phone clips do not curve upward, as did the clip on the object in defendant’s pocket. As to the suggestion that the object might have .been a tape measure, the detective noted that, had the object been a tape measure, the top of it (which stuck out of the poqket) would have been “square.” When asked why he took the object from defendant’s pocket, the detective answered: “Because I feared for my safety. And I didn’t know whether it was a knife or [a] handgun.”
The motion court granted suppression. It found the detective’s testimony credible except for the assertion that he feared for his safety, which, in the court’s view, was undercut by the detective’s admission that he and his partner did not draw their sidearms as they approached defendant. The court also noted that, although defendant’s obstruction of traffic was “obnoxious,” his conduct was not otherwise suspicious, in that he did not act furtively, did not reach for his hip or back pocket, and never tried to flee. The court further rejected the prosecution’s contention that the detective’s actions were justified by reasonable suspicion, noting that the detective could not absolutely exclude the possibility that the clipped object was lawful until he removed it from defendant’s pocket. Defendant’s statement was suppressed as the fruit of his arrest based on the disapproved seizure of the knife. This appeal by the People ensued.
We reverse and deny the motion. The detective’s firm belief, based on his training and extensive experience, that the shiny object he saw clipped to (and protruding from) defendant’s pocket was a gravity knife or small-caliber handgun, even if not amounting to an absolute certainty, constituted reasonable suspicion of criminal activity justifying a level-three forcible stop under People v De Bour (40 NY2d 210, 223 [1976]; see People v Fernandez, 60 AD3d 549, 549 [2009] [officer’s belief that object in defendant’s pocket was a gravity knife, “even if (its) illegal status (could not) be determined without testing it,” constituted “reasonable suspicion . . . that defendant possessed an illegal weapon”]; People v Carter, 49 AD3d 377 [2008], lv denied 10 NY3d 860 [2008] [suppression was properly denied based on finding that officer “saw what appeared, based on his experience, to be an illegal gravity knife clipped to defendant’s *894 clothing, and that he did not merely see a clip”]).* Given his reasonable suspicion that defendant was carrying an illegal weapon, the detective acted properly in securing the suspicious object by immediately removing it from defendant’s pocket CFernandez, 60 AD3d at 550, citing People v Batista, 88 NY2d 650, 654 [1996]). “Patting down defendant’s pocket would have served no useful purpose, since the knife was visible and a pat down would have revealed what the officer already knew” CFernandez, 60 AD3d at 550). Specifically, had the detective patted down defendant’s pocket, he would have confirmed only that the object clipped inside was most likely a gravity knife (see Penal Law § 265.00 [5] [the blade of a gravity knife remains inside the handle or sheath until “released ... by the force of gravity or the application of centrifugal force”]). Further, the detective’s seizure of the knife was, in fact, less physically intrusive to defendant than a frisk would have been, and did not involve restraining him.
While the motion court did not credit the detective’s testimony that he “feared for [his] safety,” the detective’s fear for his safety is not dispositive of whether the knife was properly seized. Even had the detective testified that he had no fear for his safety, “[t]he facts giving rise to the constitutionally permissible intrusion by the officer [would] not [be] negated by [that testimony]” (People v Batista, 88 NY2d at 654). Given the detective’s firm and well grounded belief that the object in defendant’s pocket was an illegal weapon, he had “reasonable suspicion that defendant was armed or dangerous” (id.), and that was sufficient ground for denial of the suppression motion.
We note that defendant’s reliance on People v Best (57 AD3d 279 [2008], lv denied 12 NY3d 756 [2009]) is misplaced. In Best, this Court affirmed the denial of suppression because “[t]he officer’s observation of a clip and part of a knife protruding from defendant’s pocket, which he believed to be a gravity knife based on prior experience, provided, at least, a founded suspicion of criminal activity, permitting the officer to make a nonforcible stop and a common-law inquiry” (id. at 280 [emphasis added]). Because the officer in Best had not gone beyond those steps, it was unnecessary for us to determine whether the same facts gave rise to reasonable suspicion, and we made no such determination, specifically noting that, on the record in that case, the officer had “at least” a founded suspicion of criminal activity. Also inapposite is People v Mendez (68 AD3d 662 [2009], lv *895 denied 14 NY3d 842 [2010]), in which we granted suppression because the arresting officer, by his own account, “did not see any characteristics of an illegal type of knife” (id. at 662), and admitted that the only basis for suspecting that the object in the defendant’s pocket was a gravity knife was that “any folding knife [which the object appeared to be] could, upon inspection, turn out to be a gravity knife” (id.). Here, by contrast, the arresting detective specifically testified that, based on his training and experience, he believed the object in question to be an illegal weapon. While the defense in Mendez evidently succeeded in eliciting admissions warranting suppression from the police witness in that case, any such admissions were based on that particular witness’s personal knowledge, training and experience, which may well have been less extensive than that of the police witness here. The People are not bound in subsequent cases by the testimony given by police witnesses in prior cases. In other words, each case is decided on its own record.
In reviewing the record of this particular case, we find no support for the dissent’s theory that the only way to determine whether a partially obscured folding knife is most likely to be an illegal gravity knife is to hold and test the knife. In this case, the arresting detective testified that, based on his extensive experience and training, he could be substantially certain that the object he observed in defendant’s pocket was an illegal weapon. Nothing in the record, in the statute, or in any prior holding of this Court, contradicts the import of that testimony. In this regard, to the extent the detective acknowledged that it is possible for a legal knife to be furnished with a clip, or that he could not be absolutely sure that the object was an illegal knife until he tested it, this does not undermine his testimony that he was nonetheless substantially certain that the object in defendant’s pocket was an illegal weapon. The standard for the detective’s action was merely reasonable suspicion, not absolute certainty or even probable cause. Given that defendant bore the burden of proof on the suppression motion, we cannot assume that, had defense counsel pursued this line of questioning further, she would have succeeded in demonstrating that the detective in fact could not articulate his basis for reasonably suspecting that the object (if a knife rather than a handgun) was an illegal knife (such as a gravity knife or switchblade) rather than a legal knife (such as a pocket knife). Accordingly, on the record in this case, the detective’s seizure of the knife was supported by reasonable suspicion of illegality.
Finally, we reject the dissent’s view that the seizure of the knife was a level-four police intrusion under De Bour that *896 required probable cause, not mere reasonable suspicion, for justification. As previously noted, the police action in question—grabbing a suspicious object protruding out of defendant’s back pocket—did not involve any physical restraint of defendant’s person, and was less physically intrusive to him (and a considerably lesser breach of his privacy) than a frisk would have been. Hence, the seizure of the knife cannot be equated to an outright arrest. People v Cobb (208 AD2d 453 [1994]) is not to the contrary; the police action in that case was a full-blown search of the defendant’s pocket. In this case, the detective neither felt the outside of defendant’s pocket nor placed a hand inside it; he simply removed the suspicious object that was sticking out. Concur—Mazzarelli, J.E, Friedman and Abdus-Salaam, JJ.

 In dismissing our decisions in Fernandez and Carter as “lackfing in] precedential value,” the dissent tacitly admits that the result it would reach is contrary to those cases.