THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DENARD BUTLER, Appellant. [917 NYS2d 147]—

Judgment, Supreme Court, New York County (Charles H. Solomon, J., at suppression hearing and speedy trial motion; Ruth Pickholz, J., at jury trial and sentence), rendered June 16, 2009, convicting defendant of two counts each of robbery in the first and second degrees and two counts each of criminal possession of a weapon in the second and third degrees, and sentencing him, as a second violent felony offender, to an aggregate term of 12 years, affirmed.

The verdict was based on legally sufficient evidence and was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]). There is no basis for disturbing the jury's credibility determinations. Although the robbery victims did not see defendant's face, there was a chain of circumstantial evidence, including defendant's possession of jewelry taken in the robbery very shortly after it occurred, that had no reasonable explanation except that defendant was one of the robbers.

The court properly denied defendant's suppression motion. There is no basis for disturbing the court's credibility determinations. The rapidly unfolding sequence of events justified every aspect of the police conduct, even though officers detained and frisked defendant before they became aware that he was implicated in a robbery. Initially, the police had, at least, reasonable suspicion that all the persons who fled from a crashed vehicle were involved in criminal activity (*see People v Pines*, 99 NY2d 525 [2002]). The vehicle had spontaneously led the police on a high speed chase that was unlawful and went beyond mere traffic infractions, and the police also had some information that it may have been stolen. Almost immediately after the crash, other officers saw defendant and a codefendant running, and these officers reasonably suspected that the two men were among the suspects described in a radio communication as having fled from the crashed vehicle. The men met a general description of the suspects and were running in the suspects' direction of travel on a nearly deserted street in extremely close spatial and temporal proximity to the crash. After the officers briefly lost sight of the men, they saw two cabs stopped at a red light on the block onto which the men had turned. The first cab driver gestured toward the second cab, and the second cab driver flashed his high beams, clearly seeking police intervention (*see People v Blakely*, 46 NY2d 1026 [1979]). In the backseat of the second cab, the officers saw defendant and the codefendant, who appeared to be the men they had seen running, and who were sweating profusely and breathing heavily. Based on all this information, the officers had, at least, reasonable suspicion that these were the men who had fled from the crashed vehicle (*see e.g. People v Lineberger*, 282 AD2d 369, 370 [2001], *affd* 98 NY2d 662 [2002]), and they were entitled to frisk them to ensure their own safety (*see generally People v Batista*, 88 NY2d 650, 653-654 [1996]). We have considered and rejected defendant's remaining suppression arguments.

There is no merit to defendant's arguments concerning the court's refusal to impose a sanction for the loss of documents alleged by defendant to contain *Rosario* material, the court's charge on the inference that may be drawn from recent, exclusive and unexplained possession of the fruits of a crime, and the alleged unfairness of the trial.

Finally, while the court properly denied defendant's speedy trial motion, it erred by not charging the People, in addition to the 125 days that the court assessed, with an additional period of 28 days that ran from June 11, 2007, when the case was on for pretrial hearings. When the court called the case at 10:40

A.M., defendant's attorney, Darren Fields, was not present, but the codefendant's counsel informed the court that Mr. Fields was "on route." Upon the People's request for an adjournment until July 9 or 10 to accommodate the vacation schedule of several police officers, the court adjourned the pretrial hearing to July 9. At 10:45 A.M., Mr. Fields appeared, whereupon the court recalled the case and informed counsel of the adjournment.

The court did not charge the People with the 28-day period between June 11 and July 9 on the ground that, although the People were not ready on June 11, the period was excludable because defendant's counsel was not present when the case was called (*see People v Mannino*, 306 AD2d 157, 158 [2003], *lv denied* 100 NY2d 643 [2003]). Under the circumstances, where the People were not ready, requested an adjournment, and were accommodated by the court, and Mr. Fields appeared within minutes of the calendar call, the 28 days should have been charged to the prosecution. The situation is distinguishable from that found in such cases as *People v Lassiter* (240 AD2d 293, 294 [1997]) and *People v Brown* (195 AD2d 310, 311 [1993], *lv denied* 82 NY2d 891 [1993]), in that here the court knew that counsel was en route but still granted the adjournment to the People before counsel arrived immediately thereafter.

Since the increase of 28 days is still less than the 182 allowed under CPL 30.30, the judgment stands.

This decision does not dispose of any issues raised on the People's appeal from the sentence (appeal No. 3537). Concur—Acosta, Renwick and Freedman, JJ. Tom, J.P., concurs in result only.

McGuire, J., concurs in a separate memorandum as follows: I agree with the majority's disposition of this appeal and with its analysis, except with respect to aspects of its discussion of defendant's speedy trial motion. In denying defendant's speedy trial motion, Supreme Court ruled that 125 days of delay were chargeable to the People. On appeal, defendant disputes 11 other periods of delay, accounting for an additional 281 days of delay, arguing that they should be charged to the People. The majority implicitly holds that Supreme Court correctly excluded all but 28 of these 281 days, for it identifies Supreme Court's sole error as not charging these 28 days to the People. With respect to 10 of the 11 disputed periods (accounting for 253 of the 281 days), the majority makes no mention of any of defendant's arguments, presumably because it regards all of them (correctly, in my view) as so lacking in merit as to warrant no discussion. I would reject defendant's arguments with respect to all 11 periods of delay. Thus, my ultimate conclusion that the speedy trial motion

properly was denied is dependent on 11 subconclusions, each of which is as necessary to my ultimate conclusion as any other (although no single subconclusion, viewed in isolation, is essential to the ultimate conclusion). I discuss 1 of the 11 disputed periods only because the majority discusses it and erroneously concludes that this period is chargeable to the People.

With respect to this period, the delay from June 11, 2007 to July 9, 2007, there is no dispute that defendant's counsel was not present in court when the case was called at 10:40 A.M. on June 11. Nor is there any dispute that the call of the calendar began at 9:30 A.M. Indeed, the court noted that very fact when the case was called and defendant's counsel was absent. Thus, when the case was called, defendant's counsel was one hour and 10 minutes late. When the case was called, counsel for one of the two codefendants told the court only that defendant's attorney had reported he was "on route." Of course, however, that statement was uninformative with respect to where defendant's attorney was and when he would be appearing. For all the court knew, counsel could have been an hour or two hours away. Moreover, cocounsel provided nothing to the court by way of a factual basis for that statement. The prosecutor informed the court that the People were not ready for trial and requested an adjournment to July 9 or 10 to accommodate the vacation schedules of several police officers. The court then adjourned the case to July 9. Five minutes later, counsel appeared and the case was recalled. Counsel did not offer any explanation at all for his lateness, did not suggest that the attorneys for the codefendants might still be available and did not protest the adjournment to July 9.

This period of delay is excludable for an abecedarian reason: defendant was without counsel through no fault of the court when the case was called (*see People v Mannino*, 306 AD2d 157, 158 [2003], *lv denied* 100 NY2d 643 [2003] [excluding period of delay occasioned by absence of defense counsel when case was called because CPL 30.30 (4) (f) specifically excludes any period of time when "the defendant is without counsel through no fault of the court"]).

The majority's express conclusion that this period of delay should have been charged to the People is nothing short of astonishing, especially because it entails the unspoken conclusion that defendant was without counsel due to some fault of the court. The majority's entire explanation consists of the following: "Under the circumstances, where the People were not ready, requested an adjournment, and were accommodated by the court," cocounsel indicated that defendant's attorney was

on his way, "and [defendant's attorney] appeared within minutes of the calendar call, the 28 days should have been charged to the prosecution." The first two components of the majority's explanation are obviously irrelevant; if the People had announced their readiness (and for that reason, of course, did not seek an adjournment) the delay would be excludable for an independent reason. The irrelevance of the third component—that cocounsel indicated that defendant's attorney was on his way—is just as obvious. Counsel already was more than one hour late when the case was called. It may be that the court nonetheless would have tolerated that lateness and waited if the court knew that counsel would be appearing in 5 or 10 minutes or if the court had been told that counsel was in the hallway, in the building or a block away. But the court certainly did not know and was not told anything of the sort. As noted above, the majority does not and cannot dispute the point, the sole statement made to the court—that counsel was "on route"—is utterly uninformative.

Even putting aside that counsel was more than an hour late when the case first was called, the irrelevance of the fourth component is no less clear. Because the court did not know and could not have known when counsel would be appearing, it is folly to make the excludability of the delay dependent on the unforeseeable fact that counsel did appear five minutes later. Moreover, the majority should explain both whether the adjournment would be chargeable to the People if counsel had not appeared for another 30, 60 or 90 minutes and why trial courts must wait for attorneys who are reportedly "on route." A rule requiring our busy trial courts to wait for tardy lawyers is not a salutary one. Trial judges should be free to insist on, and be given broad discretion to enforce, punctuality. A rule requiring trial judges to tolerate lateness would only undermine their authority and engender more lateness. The majority's position is all the more untenable because counsel failed to provide any explanation for his tardiness when he finally did appear, more than an hour and 10 minutes late. The majority's disregard of that failure is startling. For all the majority knows, counsel had a particularly leisurely breakfast, stopped to chat for a spell with an old friend or otherwise acted irresponsibly. If counsel had anything like a good explanation, one would think he would have provided it. So, too, if the majority has a good explanation for its position, one would think it would provide it.

Happily, the majority's conclusion that this period of delay should be charged to the People is pure dictum that trial courts are free to disregard. After all, given the majority's holding that

the speedy trial motion properly was denied, its conclusion that this period should have been charged to the People is necessarily gratuitous. Notably, the majority does not explain why it nonetheless chooses to opine on this period. By unnecessarily opining on this period, the majority engages in adventurism that is inconsistent with the judicial function (*cf. Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 713 [1980] ["fundamental principle of our jurisprudence" "forbids courts to pass on academic, hypothetical, moot or otherwise abstract questions"]).