People v Mendez (2024 NY Slip Op 51634(U))

[*1]

People v Mendez

2024 NY Slip Op 51634(U)

Decided on December 4, 2024

Criminal Court Of The City Of New York, New York County

Brown, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 4, 2024
Criminal Court of the City of New York, New York County

The People of the State of New York,

against
Gisela Mendez, Defendant.

Docket No. CR-011371-24NY

Gina Wicik, Esq., Law Office of Gina M. Wicik
Assistant District Attorney Tiffany Wakeham, New York County District Attorney's Office

Marva C. Brown, J.

Gisela Mendez, hereinafter "defendant," is charged with Operating a Motor Vehicle While Intoxicated (VTL 1192[3]), an unclassified misdemeanor, and Operating a Motor Vehicle While Impaired (VTL 1192[1]). By Notice of Motion to Dismiss, filed September 30, 2024, the defense challenges the validity of the People's Certificate of Compliance (COC) and seeks dismissal pursuant to CPL 30.30. The People oppose by motion dated November 6, 2024, and the defense filed reply papers dated November 12, 2024.
Upon review of the submissions, the Court file and relevant legal authority, this court finds that the People's COC is INVALID, and thus, the People's Certificate of Readiness (COR) is ILLUSORY. As there are more than 90 days chargeable to the People, the defendant's motion to dismiss is hereby GRANTED.
PROCEDURAL HISTORY
The defendant was arraigned on April 17, 2024. The defendant was released, and the case was adjourned to June 4, 2024, for conversion. On June 4, the defendant was present and with her original attorney from The Legal Aid Society but without newly hired counsel, who was unavailable. At that appearance, the People had yet to file a COC or COR, and the case was adjourned to June 18, 2024. On June 18, new defense counsel was present, the People had yet to file a COC or COR, and the case was adjourned to August 12, 2024, for trial. 
On July 1, 2024, the People served and filed a COC along with a COR. Subsequently, the People filed nine supplemental COCs (SCOCs), along with restatements of readiness with each SCOC. The dates of the SCOC filings range from July 3, 2024, to October 18, 2024. The SCOC relevant to this decision was served and filed on September 18, 2024, and included the Airgas Certificate for the Draeger PBT used to test the defendant at the hospital on the night of her arrest, along with the Intoxilyzer permit for the officer who conducted the portable breath test (PBT).
On August 12, 2024, the People stated that they were ready for trial, and the defense orally challenged the validity of the People's COC and readiness. The case was adjourned to October 8, [*2]2024, for trial, and the court advised the defense that they could file a motion at that time if they wished to formerly challenge the People's COC. On October 8, 2024, the instant motion schedule was set, and the case was adjourned to December 4, 2024, for a decision. 
The defense argues that the following items were not turned over as required by the People: all body-worn camera taken at the hospital during the defendant's PBT testing; complete Airgas Certificates of analysis for lots calibrated on the Draeger PBT for the six months before and after the defendant's arrest; the NIST report from Guth Labs of Analysis and gas chromatography records for all solutions used to calibrate the PBT, along with the re-certification of these solutions numbers; the certification or training of Officer Cahill, who conducted the PBT; and the PBT printout. 
In their reply, the People indicate that all BWC was disclosed, and that the BWC alleged by the defense to be "missing" does not exist. The People concede that they first served the Airgas Certificate for the Draeger PBT on September 18, 2024, along with a SCOC and restatement of readiness. The People argue that the document was "beyond the scope of discovery because PBTs are usually used only for establishing probable cause" (see P.'s Response p. 7). Further, the People argue that "when the defendant asked the People for the certificate, the People inquired with the NYPD and provided the defendant the material as soon as they received it on September 18, 2024" (id.). 
The People also concede that they did not disclose Officer Cahill's PBT certification but argue that the NYPD does not provide certification to officers who complete PBT trainings. On September 18, 2024, the People emailed Officer Cahill's Intoxilyzer 9000 permit to the defendant. The People maintain that this permit is not automatically discoverable since no Intoxilyzers were used on the defendant.

 VALIDITY OF THE PEOPLE'S CERTIFICATE OF COMPLIANCE
Under CPL 245.20[1], "the prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test, all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control, including but not limited to" the items listed in CPL 245.20[1][a]-[u]. All items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution (CPL 245.20[2]; see also CPL 245.55[1] [prosecution must "ensure that a flow of information is maintained between the police and other investigative personnel and his or her office"]). The prosecution must also "make a diligent, good faith effort to ascertain the existence of material or information discoverable under [CPL 245.20[1]] and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody, or control" (CPL 245.20[2]). "Read together, CPL 245.50 and CPL 30.30 require that due diligence must be conducted prior to filing a COC" (People v Bay, 41 NY3d 200, 212 [2023]). 
CPL 245.10 sets forth time periods for automatic disclosure, requiring that "[w]hen the defendant is not in custody during the pendency of the criminal case, the prosecution shall perform its initial discovery obligations within thirty-five calendar days after the defendant's arraignment" (CPL 245.10[1][a][ii]; see also Bay, 41 NY3d at 209). Prosecutors cannot validly state "ready for trial" under CPL 30.30 until they have filed a proper COC pursuant to CPL 245.50[1] (Bay, 41 NY3d at 214, citing CPL 245.50[3]). Likewise, CPL 30.30[5] states: "Any statement of trial readiness must be accompanied or preceded by a certification of good faith compliance with the disclosure [*3]requirements of C.P.L. § 245.20 and the defense shall be afforded an opportunity to be heard on the record as to whether the disclosure requirements have been met." 
The defense must "notify or alert" the prosecution "as soon as practicable" of any defects or deficiencies relating to a COC, and any challenges relating to the sufficiency of a COC or supplemental COC shall be addressed by motion (CPL 245.50[4]). Although belated disclosures do not automatically invalidate a COC, in such instances, the People bear the burden of establishing that they exercised "due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (Bay, 41 NY3d at 213, citing People v Santos, 68 NY2d 859, 861 [1986]). The Court of Appeals in Bay discussed how courts can evaluate prosecutorial due diligence and reasonableness as it pertains to discovery compliance:
Although the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery (id.).
While the statute does not require a "perfect prosecutor", "the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence" (Bay, 41 NY3d at 213, citing CPL 245.20[2]; CPL 245.50[1], [3]; and People v Anderson, 66 NY2d 529, 536 [1985] [statutory requirement of due diligence established that more than good faith was required]). If the prosecution fails to demonstrate that they exercised due diligence prior to filing their COC, "the COC should be deemed improper, the readiness statement stricken as illusory, and — so long as the time chargeable to the People exceeds the applicable CPL 30.30 period — the case dismissed" (Bay, 41 NY3d at 213). "[A] defendant need not demonstrate prejudice to obtain speedy trial dismissal based on failure to timely comply with discovery obligations" (id., citing People v Hamilton, 46 NY2d 932, 933-34 [1979] and CPL 30.30[1]). 

A. Officer BWC
The defense argues that the People failed to turn over any type of BWC from any law enforcement officers who interacted with the defendant at the hospital. The People argue they disclosed all BWC on May 8, 2024, and that the BWC footage the defense alleges was "missing" does not exist. The People explain that the BWC disclosed included all BWC from Officer Cahill, who turned on his BWC for three separate hospital interactions: (1) when the officer asked the defendant to take the blood test; (2) when the defendant started questioning him about the blood test and he once again asked for consent; and (3) when Officer Caceres read the interrogation warnings to the defendant and then explained that the hospital had refused to draw blood for the test. The People indicate that, other than these three captured interactions, there is no outstanding BWC footage from the hospital. The People also confirmed this with Officer Cahill and the First Precinct, when the defense inquired about the "missing" BWC. 
As such, this court finds that the People acted with due diligence with respect to the BWC for this case and will not invalidate their COC on this basis.
B. PBT Certification of Officer Cahill
CPL 245.20[1][s] requires for any prosecution alleging a violation of VTL 1192[3] that the prosecution to automatically disclose "the certification certificate, if any, held by the operator of the machine or instrument" (id.). The People once again fail to articulate any steps taken to obtain this [*4]certification prior to filing their July 1st COC. However, the People claim that PBT certification of officers do not exist. Once the defense brought this to their attention, the People spoke with Officer Cahill about whether he has a PBT certification, and he responded that he did not. He did indicate that he has an Intoxilyzer permit, and on September 18, 2024, the People emailed Officer Cahill's Intoxilyzer 9000 permit to the defendant. The People also consulted with the chief of the vehicular crimes unit at the Manhattan District Attorney's Office, who verified with the head of the DWI unit or the NYPD that there is no PBT certification.
The defense disputes the People's claim that PBT certifications do not exist for NYPD officers and cites to People v Hernandez, 78 Misc 3d 768, 771 [Crim Ct, Bronx County 2023]. In Hernandez, the court conducted a hearing to determine the admissibility of Draeger Alcotest 7510 PBT results, eventually concluding that the PBT results could be admitted at trial. As stated in Hernandez, "[t]he Draeger Alcotest 7510 is a roadside breath instrument used by both the NYPD Highway Patrol and the Force Investigation Unit. Detective Kessler was trained directly by Drager Safety over two to three days on how to maintain, calibrate, operate and work on the Drager Alcotest 7510 to ensure the proper functioning of the machines. In addition to being certified to operate and maintain this machine, Detective Kessler is also certified to teach others how to properly administer a chemical test analysis of a person's breath using the Drager Alcotest 7510" (id.) (internal citations omitted). While this case implies that formal written PBT Certifications may exist for NYPD officers who administer the machine, there is nothing in this case that directly contradicts the People's information that Officer Cahill does not have a formal PBT Certification certificate. 
As such, assuming that this PBT Certification certificate does not exist, this court does not find that the People's failed to exercise due diligence with respect to Officer Cahill's PBT certification certificate. 
C. Draeger PBT Documents
CPL 245.20[1][s] requires in any prosecution alleging a violation of VTL 1192[3] for the prosecution to automatically disclose "all records of calibration, certification, inspection, repair or maintenance of machines and instruments utilized to perform any scientific tests and experiments, including but not limited to any test of a person's breath, blood, urine or saliva, for the period of six months prior and six months after such test was conducted, including the records of gas chromatography related to the certification of all reference standards." 
1. PBT Calibration Documents
The defense argues that the People failed to disclose the calibration documents for the PBT used in this case — the Draeger Alcotest 7510, ARMC-0164. The People respond that they shared calibration reports for this machine on June 21, 2024, prior to filing their COC. The calibration exams for this PBT were performed on August 17, 2023, September 30, 2023, and January 25, 2024, with the latter report expiring on April 4, 2025. The People explained that the January 25, 2024, report is the last known calibration report for the ARMC-0164 lot as of November 4, 2024. The People explain that New York State mandates calibration of the Drager machine once a year. The People also state that they have continued to inquire about additional calibration reports for this machine. The defense did not dispute any of these claims in their reply.
As such, this court finds that the People exercised due diligence and properly disclosed the PBT calibration reports for this case. 
2. Gas Chromatography
The defense argues that the People failed to exercise due diligence and timely disclose the Draeger PBT gas chromatography for the simulator solution lots used in the machine's calibration. Although unclear from the parties' papers, based on independent research by this court, it appears [*5]that the gas chromatography records for this PBT machine are called "Airgas Certificates of Analysis." The People concede that the Airgas Certificate of Analysis for this case, which included all three lot solutions for this PBT machine, was not disclosed until September 18, 2024. 
CPL 245.20[1][s] clearly requires automatic disclosure of the Airgas Certificates of Analysis for this PBT machine (see also People v. Wilber S., 83 Misc 3d 1293[A][Crim Ct, Queens County 2024] [the People's agreement not to admit the PBT into evidence "does not absolve them of their discovery obligations under CPL 245.20 to provide records related to the PBT"]). The People's argument that these records are "beyond the scope of discovery because PBTs are usually used only for establishing probable cause" is not only unpersuasive but illogical. Clearly, whether there was probable cause to arrest the defendant is something that is of great interest to the defense. "The PBT records relate to the subject matter of the case and are relevant to the hearing and may support an inference of whether probable exists or does not exist (Wilber S., 83 Misc 3d 1293[A]; citing People v Kulk, 103 AD3d 1038, 1040 [3d Dept 2013]; CPL 245.20[1][s]). 
Further, while PBT results are generally inadmissible, courts have ruled that these results can be admitted when their reliability can be established (e.g. People v Owen, 75 Misc 3d 127[A] [App Term, 2d, 9th &10 Jud Dists 2022]). The gas chromatography records of the PBT machine would clearly be relevant in a hearing on the reliability and potential admissibility of PBT results. However, regardless of admissibility, "[t]he People's evidentiary opinions have absolutely no import in a CPL article 245 discovery analysis and whether a prosecutor believes a piece of evidence is useful to a defendant is of no consequence" (People v Burmeo, Docket No. CR-035833-23KN [Crim Ct, Kings County 2024] [invalidating People's COC for failure to disclose PBT records], citing People v Payne, 79 Misc 3d 827, 831 [Crim Ct, Bronx County 2023]; People v Goggins, 76 Misc 3d 898, 901 [Crim Ct, Bronx County 2022]; People v Cooper, 71 Misc 3d 559, 566 [Erie County Ct 2021]; People v Ballard, 82 Misc 3d 403 [Crim Ct, Queens County 2023]).
Here, the People failed to articulate any steps taken to disclose these items prior to the filing of their initial COC, and therefore failed to show that they exercised due diligence (see People v Wharton, 217 NYS3d 804 (App Term, 2nd, 11th, 13th Jud Dist 2024 ["As the record on appeal is bereft of any information as to whether the People made reasonable inquiries with respect to the above-referenced materials prior to filing their COCs, the People failed to show that they exercised due diligence. . . it is of no import that any material was ultimately not used, since, in the first instance, the People were required to show due diligence and good faith in order to submit a proper COC"]). The fact that they inquired with the NYPD once the defense advised them these documents were missing and provided the material when they received it, does not cure the fact that they failed to exercise due diligence prior to filing their COC. The People's duty to disclose discoverable items is automatic and is no longer only triggered by a request from the defense.
Therefore, the People failed to act with due diligence with respect to the gas chromatography records for this PBT machine, and therefore, their initial COC was invalid.[FN1]

3. PBT Printout
Three separate PBT readings were created in this case — two at the scene (.126 and .16 respectively), and one later at the hospital conducted by Officer Cahill with the Draeger Alcotest [*6]PBT, which read .16. "Unlike an Alco-Sensor FST, the Drager Alcotest connects to a printer that prints out the results of a sample" (People v Hernandez, 78 Misc 3d 768, 771 [Crim Ct, Bronx County 2023]). Here, the defense claims, and the People concede, that they never received the PBT printout for the PBT Officer Cahill conducted at the hospital. The People do not contest that this item is automatically discoverable, but they claim that the PBT printout is "presumed lost". According to the People, Officer Cahill gave the printout to Officer Caceres, who was the arresting officer for this case. However, the People never received this printout as part of their request for all NYPD paperwork generated for this case. The People provided no information as to when they first requested all police paperwork for this case. They simply state that once notified by the defense that this printout was missing, they reached out to Officer Cahill, who confirmed that he did not have the printout but gave it to Officer Caceres. The People claim that Officer Carceres is "unreachable," as he is currently training with the National Guard. 
The People claim that they asked Officer Caceres "for all the paperwork, photos, and material related to the incident but never received the Drager printout". However, they do not indicate when they first reached out to Officer Caceres. Further, it appears that the first time the People attempted to specifically locate the PBT printout was when defense counsel alerted them to the fact that it was missing in August — over four months from the date of the defendant's arrest. It is unclear when Officer Caceres began his training with the National Guard, or the length and dates of this training. This printout clearly existed and possibly could have been disclosed had the People had pursued this issue earlier in the case and within the timeframe outlined in CPL 245.10[1][a][ii] (id. [requiring that "[w]hen the defendant is not in custody during the pendency of the criminal case, the prosecution shall perform its initial discovery obligations within thirty-five calendar days after the defendant's arraignment"]; see also Bay, 41 NY3d at 209). As such, the People failed to meet their burden to show that they exercised due diligence with respect to the PBT printout prior to filing their July 1st COC. Lastly, given their duty ensure the flow of information between their office and the NYPD, these actions still cannot constitute due diligence even if this discovery is no longer available, as the People claim.
As such, the People's failure to exercise due diligence with respect to the PBT printout renders their June 1st COC and the accompanying COR invalid.

SPEEDY TRIAL
Pursuant to CPL 30.30[1][b], when a defendant is charged with a misdemeanor punishable by a sentence of more than three months, the prosecution must be ready within 90 days from the commencement of that criminal action. To satisfy the initial burden under CPL 30.30, the defendant need allege "only that the prosecution failed to declare readiness within the statutorily prescribed time period" (People v Luperon, 85 NY2d 71, 77-78 (1995); see also People v Goode, 87 NY2d 1045, 1047 [1996]). Once the defendant has alleged that more than the statutorily prescribed time period has elapsed since the commencement of the action, the prosecution bears the burden of establishing sufficient excludable delay (see People v Berkowitz, 50 NY2d 333, 349 [1980]). Absent a valid COC, the People cannot be deemed ready for trial (CPL 245.50[3]).
Defendant was arraigned on April 17, 2024. The defendant was released, and the case was adjourned to June 4, 2024, for conversion. This entire time is charged to the People. (48 days charged)
Prior to the June 4th court appearance, the defendant retained private counsel. The defendant's newly retained attorney sent a letter to the court indicating representation, and although it is unclear when this letter was received by the court, it is dated May 28, 2024, and a copy of it is in [*7]the court's file. The letter was on office letterhead and included the defense attorney's address, phone number, fax and email. In the letter, defense counsel indicated that her firm was retained as of May 27, 2024. The letter explained that she could not appear at the June 4th court appearance and gave a reasonable explanation as to why. Defense counsel suggested several alternate dates, with the earliest being June 10, 2024. No one appears to have responded to the letter, and the case remained on the court's calendar as planned for June 4, 2024. 
On June 4, the defendant appeared along with her prior attorney from The Legal Aid Society, the same attorney who represented her at arraignments. The Legal Aid Society was relieved, the People were not ready as they had yet to file a certificate of compliance or statement of readiness, and the case was adjourned to June 18, 2024, which was one of defense counsel's suggested alternate dates. During that time, the People did not file a COC or COR. The People argue that this adjournment should be excluded under CPL 30.30[4][f]. This court disagrees.
The Court of Appeals has long held that "the right to a speedy trial guaranteed by CPL 30.30, which relates to prosecutorial readiness, is not dependent in any way on whether the defendant has expressed his readiness for trial" (People v Hamilton, 46 NY2d 932, 933-34 [1979]; see also People v Bay, 41 NY3d 210, 214 [2023] [finding prejudice irrelevant when determining speedy trial dismissals and citing Hamilton]; People v Anderson, 66 NY2d 529, 535 [1985] [The purpose of the speedy trial statute is to address "only the problem of prosecutorial readiness"]). Even prior to the enactment of Article 245, the Court of Appeals clearly explained "[t]he People can avoid being charged with prereadiness delay occasioned by court scheduling by filing a certificate of readiness" (People v Smith, 82 NY2d 676, 678 [1993]; see also People v Barden, 27 NY3d 550, 553 [2016] ["pre-readiness delays arising from court congestion or court scheduling problems are chargeable to the People, because court delays do not prevent the People from being ready or declaring readiness in a written off-calendar statement"], citing People v Chavis, 91 NY2d 500, 504 [1998]; People v Smith, 82 NY2d 676, 678 [1993]; People v Kendzia, 64 NY2d 331, 337-338 [1985]; People v Brothers, 50 NY2d 413, 417 [1980]). As stated in Smith, "[t]he rule we restate today, which requires the prosecution to file a certificate of readiness or make a statement of readiness in open court, objectively establishes the date on which they can proceed and eliminates the need for a court to determine to whom adjournment delays should be charged" (id.). 
CPL 30.30[4][f] only excludes "the period during which the defendant is without counsel through no fault of the court." Here, the defendant appeared on June 4th and with an attorney — the same attorney from The Legal Aid Society who had been assigned at her arraignment. This attorney was present at a time when the People were not ready, had yet to file a COC or COR, and required an adjournment to do so. This is not a situation where the defendant was "without counsel" and was requesting that the court adjourn the case for her to have time to hire an attorney. Instead, here, the court was aware that the defendant had obtained private counsel and had a formal letter confirming that representation, along with contact information for that newly hired attorney. The defendant was not "without counsel" at any time, let alone on June 4, 2024 (see People v Justice A., 40 NY3d 1009, 1010-11 [2023] [charging adjournment where the defendant appeared at a time when his case had yet to be reassigned]; People v Rouse, 12 NY3d 728, 729 [2009] [codefendant was not "without counsel" where he initially appeared without an attorney but was assigned one at the very end of the court appearance]; People v Alvarez, 194 AD3d 618, 620 [1st Dept 2021] [charging an adjournment where a colleague of defense counsel appeared]; People v Nunez, 47 AD3d 545, 546 [1st Dept 2008] [held a defendant was not "without counsel" where a colleague appeared on the defendant's behalf]; People v Session, 206 AD3d 1678, 1681—82 [4th Dept 2022] [finding that a defendant is not without counsel when he or she has an appointed attorney even when the [*8]defendant had filed a grievance asking for the attorney to be relieved]. 
This case is distinguishable from the two cases cited by the People in support of excluding the June 4th adjournment. First, in People v Lewis, 65 Misc 3d 1044 [Kings County 2019], the court excluded a post-readiness adjournment under CPL 30.30[4][f] where the assigned defense attorney did not appear, but where the People were not ready and were requesting an adjournment. First, this decision is not binding on this court. Even if it were, the decision concerns a court appearance on a case where the People were in post-readiness posture, and where the defendant appeared alone "without counsel" on a day that the case was scheduled for trial. Similarly, in People v Brown, 149 AD3d 584 [1st Dept 2017][FN2]
, the only other case cited by the People in support of excluding this adjournment, the case was also in post-readiness posture and defense counsel was trying another case on the appearance date at issue. Furthermore, the facts in Lewis and Brown took place prior to the enactment of Article 245, when the People's readiness was not tied to discovery compliance. Here, there was no way the case could have proceeded to trial on June 4, 2024, whether retained counsel appeared or not. Like in Smith, "[t]he adjournments at issue here were, in the first instance, precipitated by the People's failure to be ready for trial" (People v Smith, 82 NY2d 676, 678 [1993]; see also People v Barden, 27 NY3d 550, 556 [2016]). 
For these reasons, the CPL 30.30[4][f] exclusion does not apply to the time period from June [*9]4, 2024, to June 18, 2024, as the defendant was not without counsel.[FN3]
(14 days charged; 62 days total)
On June 18, the People had yet to file a COC, and the case was adjourned to August 12, 2024. 
On July 1, 2024, the People served and file a COC along with a COR. However, as outlined above, the People's July 1st COC and the subsequent COCs were illusory, and as such, did not stop the speedy trial clock. Therefore, the entire time period from June 18th to August 12th is chargeable to the People. (55 days charged; 117 total)
Here, as the defendant is charged with an unclassified misdemeanor punishable by a sentence of more than three months, the applicable time period is 90 days. As more than 90 chargeable days have accrued, defense counsel's motion to dismiss is GRANTED, and this case DISMISSED. The remainder of the defense's omnibus motion is now moot.
This constitutes the Decision and Order of this Court.
Dated: December 4, 2024
HON. MARVA C. BROWN, JCC

Footnotes

Footnote 1:In their response, the People do not address the NIST report from Guth Labs of Analysis, and the defense did not address this failure in their reply. It is unclear to this court what this report is and whether these items even exist for the Draeger PBT used for this case. However, since this court has invalidated the People's initial COC on other grounds, this issue is moot.

Footnote 2:There is admittedly disagreement within the First Department on the issue of chargeable time when the People are not ready but where assigned defense counsel fails to appear (compare People v Butler, 81 AD3d 484, 485-86 [1st Dept 2011] [court charged the People where the defendant's attorney was "on route" and did not appear for the initial appearance for an adjournment but later showed and was advised of the adjournment date]; People v Brewer, 63 AD3d 402, 403 [1st Dept 2009] [defendant not found to be "without counsel" within the meaning of CPL 30.30[4][f] since "the absence of defendant's counsel did not contribute to the delay, but was manifestly the result of the defendant's nonproduction]; People v Fields, 214 AD2d 332, 333-34 [1st Dept 1995] ["Although the record indicates that defense counsel was not present, as the People indicated on the record that they were not ready, the presence of defense counsel is irrelevant to the determination that this postreadiness adjournment period is chargeable to the People"][emphasis added]; People v Holley, 191 AD2d 401, 402 [1st Dept. 1993] [finding "whether or not counsel for the codefendant was on trial elsewhere on May 2 is irrelevant; the time is includable because the People were not ready"][emphasis added]; with People v Mannino, 306 AD2d 157, 158 [1st Dept 2003] ["the People's lack of readiness is irrelevant to the determination that when defense counsel has failed to appear for a scheduled court appearance, the delay is nonetheless excludable"]; People v Brown, 195 AD2d 310 [1st Dept 1993] [excluding time period where the People weren't ready because defense counsel wasn't present "since the delay was caused predominantly by defense counsel's absence"]). This conflicting caselaw has led to disagreement throughout all jurisdictions. Further, the Court of Appeals has yet rule on whether "the period during which the defendant is without counsel" includes court appearances where the defendant is represented but appears alone in court. However, as stated above, that was not the case here.

Footnote 3:Even if this court were to have agreed with the People and concluded that the defendant here was "without counsel through no fault of the court," only the time period from June 4, 2024, to June 10, 2024 — the earliest requested date from defense counsel — would be excluded, as the Court of Appeals has routinely held that delay due to court congestion is chargeable during pre-readiness time periods (People v Labate, 42 NY3d 184, 191 [2024] ["Although the courts may be congested before the People are ready to try a case, that time is charged to the People because such delays 'do not excuse the People from timely declaring their readiness for trial'"], citing People v Smith, 82 NY2d 676, 678 [1993]; People v Brothers, 50 NY2d 413, 417 [1980] ["court congestion before the District Attorney is ready for trial ... is irrelevant and thus cannot excuse the District Attorney's failure to be ready. While court congestion may prevent a trial, in no sense does it operate to prevent the District Attorney from being ready"]; People v Collins, 82 NY2d 177, 181 [1993]; People v Correa, 77 NY2d 930, 931 [1991]).