People v Small (2025 NY Slip Op 06665)

People v Small

2025 NY Slip Op 06665

Decided on December 02, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 02, 2025

Before: Manzanet-Daniels, J.P., Moulton, Gesmer, Rosado, Hagler, JJ. 

Ind No. 70051/22|Appeal No. 5247|Case No. 2022-03391|

[*1]The People of the State of New York, Respondent,
v
Trevon Small, Defendant-Appellant.

Twyla Carter, The Legal Aid Society, New York (Thomas Palumbo of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Ethan M. Solomon of counsel), for respondent.

Judgment, Supreme Court, New York County (Laura Ward, J., at suppression hearing; Neil Ross, J., at plea and sentencing), rendered July 15, 2022, convicting defendant of attempted criminal possession of a weapon in the second degree, and sentencing him to a jail term of six months and five years of probation, unanimously reversed, on the law and the facts, the motion to suppress granted, and the indictment dismissed.
Shortly before 10:30 p.m. on the night of January 2, 2022, two uniformed police officers in an unmarked car were patrolling the north side of 112th Street between Third and Lexington Avenues in Manhattan. One of the officers, who was standing outside the car, saw defendant and a woman walking toward Third Avenue on the same side of the street as the car. The officer observed defendant look at him and then cross to the south side of 112th Street. Defendant looked at the officer a few more times and adjusted his pants while crossing with the woman back to the north side of the street. At the later suppression hearing, one of the officers testified that defendant crossed the street to avoid the patrol car. The two officers proceeded to follow defendant and the woman in the unmarked car.
While the officers were following defendant in the car, they saw him hand a small, unidentified object to the woman. The officer later described defendant handing the object to the woman as a "hand-to-hand motion usually consistent with narcotics." Notably, the other officer testified that the object was "plasticy" but also stated that it was unclear what the object was and "could have been anything," including money or a piece of gum. The officers waited in the car to see if the woman would hand money to defendant, as would ordinarily take place in a drug sale, but she never did. The woman was not searched, and no drugs were ever recovered from defendant upon his arrest.
The officers subsequently approached defendant, who had his right hand by his side and his left inside the pocket of his puffer jacket. One of the officers testified to asking defendant to take his hand out of his pocket. According to the officer, defendant asked the officer why, to which the officer responded that the request was "for [his] safety," claiming that "it's a very high crime area" and "very violent." The officer further testified that defendant did not immediately comply, so the officer asked him one more time, and he took his hand out of the pocket and started to lean toward his left side as if "he was trying to run . . . or walk away." The officer testified that he observed that defendant's left pocket had a heavy object in it and there was a "shift of weight." The officer testified that he was concerned defendant could "possibly be armed" because he was trying to conceal the object in his left pocket and was "looking away." The officers then grabbed defendant by his wrists, patted him down, and purportedly felt a gun on his left side. The officers proceeded to arrest and search defendant, finding a gun in his left jacket pocket.
Body-worn camera footage of the encounter, which lasted a matter of seconds, shows that when the officer asked defendant to remove his hand from his jacket pockets, he, although appearing to make a questioning gesture, almost immediately complied, removing his hand from his pocket and showing his empty hands to police. The video, which lacks audio until the officers placed defendant in handcuffs, also shows defendant turning from one officer to another, at which point the officers grabbed him and quickly placed him in handcuffs. The officer who testified to questioning defendant during the encounter and observing the heavy object in the left pocket of his jacket is seen on defendant's right side in the video. While the video is dark, we agree with the motion court, no significant bulge can be seen from the left side of defendant's jacket.
Supreme Court denied defendant's motion to suppress the gun, noting in its ruling that the issue was "a very close question" that turned on the court's interpretation of the officers' actions. The court deemed the officers' testimony credible and found that they had sufficient probable cause to approach and question defendant based on the testimony that the object that defendant handed to the woman appeared to be small and plastic-covered, "which was similar to things that [the officer] had seen in other narcotics arrests." The court gave credence to the officer's testimony that the officers were in "a high crime area."[FN1] Regarding the officer's testimony about observing a "shift of weight" in the left pocket of defendant's jacket, the court stated that when looking at the body-worn camera footage, it was "not sure" that it could see such a movement but that the video was taken from a different angle than that of the officer who made that observation. The court concluded that the shift in weight and defendant turning away from the officers gave police "sufficient suspicion to at least pat defendant down," and, with the officer's testimony that he felt a gun, a right to search him.
Defendant's suppression motion should have been granted. Although we decline to disturb the court's credibility determinations (People v Gneco, 234 AD3d 577, 578 [1st Dept 2025], lv denied 43 NY3d 1008 [2025]), notwithstanding our concerns about discrepancies between the officers' testimony and what is shown in the body-worn camera footage, the initial inquiry and subsequent seizure were still unjustified. Even crediting the officers' testimony that their suspicion was aroused when defendant and the woman crossed the street to avoid their patrol car, and then they later observed him pass a small object to the woman, the totality of the circumstances did not give rise to the level of suspicion required for a common-law inquiry (People v De Bour, 40 NY2d 210, 223 [1976]). Neither officer could identify what object was passed from defendant to the woman — one testified that "it could have been anything" — nor otherwise articulate why, from this innocuous behavior, they had a "founded suspicion that criminality was afoot" to warrant a level two encounter (id. at 216, 223). The police were not responding to a call, there was ambiguous testimony as to whether the encounter took place in a high crime area, and the woman did not give defendant money in exchange or immediately leave "without any kind social interaction" (cf. People v Mejias, 63 AD3d 526, 526-527 [1st Dept 2009], lv denied 13 NY3d 747 [2009]). Similarly, this Court's review of the record, including the body-worn camera video recording of the encounter, indicates that the police were not justified in their escalation to the level three seizure in restraining defendant's wrists simply because, after he was detained, and defendant complied with the officers' request that he show his hands, he turned his body away from one officer, who observed a "shift in weight" in defendant's jacket pocket (see People v Walker, 237 AD3d 102, 107 [1st Dept 2025]). Even if there had been a bulge in defendant's pocket, that observation alone does not imply a reasonable conclusion that defendant was armed (id.). Defendant's hands were in clear view when the officers seized him, and nothing in the record indicates that defendant was armed or posed a threat to safety to justify him being frisked (see People v Batista, 88 NY2d 650, 654 [1996]).
Since no other admissible evidence exists to establish the crime, and the prosecution would be unable to secure a conviction on criminal possession without the gun recovered from defendant and his statements to the police, the judgment of conviction must be vacated, and the indictment dismissed (see People v Rodriguez, 41 NY3d 1, 14 [2023]).
In view of our determination, we need not reach defendant's alternative argument that his sentence is excessive and should be reduced. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 2, 2025

Footnotes

Footnote 1: The court also stated that the officer testified that the area was "known for robberies." However, the officer described the area only as "very high crime" and "very violent," and he expressly told defense counsel during cross-examination that he was not investigating robberies in the area.